UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| FERRING INTERNATIONAL CENTER S.A.<br><br>        Plaintiffs,<br><br>    v.<br><br>VECTIVBIO AG.<br><br>        Defendant. | Case No. 2:25-cv-1001<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Ferring International Center S.A. ("Ferring") brings this action for trade secret misappropriation and correction of patent inventorship and ownership against Defendant VectivBio AG ("VectivBio"), and complains and alleges as follows:

### NATURE OF THE ACTION

1. Ferring brings this action to protect its interests in its proprietary apraglutide-related technology. Through this action, Ferring seeks to remedy VectivBio's misappropriation of Ferring's technology for its own benefit, and VectivBio's filing of patent applications claiming that technology and omitting Ferring's inventorship and ownership interests in the same, done by VectivBio without any recompense to Ferring.

### BACKGROUND

2. Ferring is an innovative biopharmaceutical company specializing in reproductive health, gastroenterology, and uro-oncology, with advanced capabilities in peptide discovery. Prior to 2010, and in furtherance of its stated mission to unlock opportunities to deliver life-

MF-363184351

changing solutions to patients at every stage of life, *Ferring scientists invented apraglutide*, a novel, long-acting glucagon-like peptide-2 ("GLP-2") analog with therapeutic potential for the treatment of various disorders.  A significant portion of that inventive work was performed in the United States.

3.  Through a provisional patent application filed on Oct. 23, 2009, and a related worldwide PCT patent application filed Oct. 21, 2010, Ferring sought composition of matter patent protection for the apraglutide compound itself.  The applications were filed in the name of Ferring's subsidiary, Ferring B.V., and patents with claims directed to apraglutide have since issued in many countries, including in the United States as U.S. Patent No. 8,580,918.  These patents continue to be owned by Ferring through Ferring B.V.

4.  After the initial discovery of apraglutide, *Ferring scientists continued to develop improvements related to apraglutide*.  This work included conceiving and reducing to practice preferred salt forms of apraglutide, including sodium salts that exhibited improved solubility, stability, and bioavailability.  Through extensive experimentation, Ferring scientists also achieved high purity with these preferred salt forms, including purities in excess of 95% and 97% as determined by high-performance liquid chromatography (HPLC), along with improved methods of manufacturing and purifying apraglutide salts, including sodium salts, among other inventions.  Rather than immediately seek to patent these significant innovations and related know-how, Ferring maintained them as trade secrets.

5.  Thereafter, in 2012, Ferring began a relationship with VectivBio's predecessor-in-interest, a corporate entity that eventually became known as GlyPharma Therapeutics Inc. ("GlyPharma"), to pursue clinical development of potential treatments using apraglutide.  As part of the Ferring-GlyPharma relationship, Ferring retained ownership of the aforementioned

composition of matter patents covering apraglutide and also retained ownership of all pre-existing Ferring know-how and inventions.  Ferring and GlyPharma distinguished such pre-existing know-how and inventions from later arising intellectual property.  The parties committed to keep confidential all information of the other, including technical information to which they gained access during the relationship.  The parties also understood that to the extent any patents were obtained on Ferring know-how and inventions that pre-existed the relationship, Ferring was supposed to receive payment, including royalties for any manufacture, use, or sale of apraglutide covered by such patents for their full terms.

6. Through a series of corporate transactions, VectivBio became GlyPharma's successor-in-interest with respect to the relationship with Ferring on apraglutide.  After stepping into the shoes of GlyPharma, VectivBio began implementing an intellectual property strategy that misappropriated Ferring-owned know-how and inventions for VectivBio's benefit, without disclosure or compensation to Ferring.  Unbeknownst to Ferring, VectivBio's strategy included the 2020 and 2021 filing of patent applications misappropriating Ferring's know-how and inventions relating to, among other things, apraglutide sodium salts and methods of making them.  VectivBio hired its own United States counsel to apply for these patents, which listed VectivBio as the sole applicant and assignee, without naming any Ferring scientists as inventors.

7. From 2020 through 2022, VectivBio held periodic meetings with Ferring, ostensibly to discuss strategy related to apraglutide.  During these meetings, Ferring provided VectivBio with certain information on the competitive landscape and regulatory exclusivities for apraglutide in relation to other GLP-2 analogs, and VectivBio disclosed to Ferring possible future indications for apraglutide.  VectivBio also repeatedly represented to Ferring that any patent applications it was separately pursuing related solely to clinical work that VectivBio employees

had direct involvement in, such as dosing pharmacokinetics/pharmacodynamics ("PK/PD") that VectivBio was exploring in clinical trials, or other potential indications such as graft-versus-host disease ("GVHD"). Ferring relied on the representations of its business partner VectivBio. VectivBio never gave Ferring any reason to suspect that VectivBio was pursuing applications on subject matter that Ferring scientists conceived of and/or reduced to practice well before Ferring began its relationship with GlyPharma.

8. To the extent that VectivBio ever conducted inventorship investigations for the applications containing this subject matter, it concealed them from Ferring. Significantly, prior to 2025, neither Ferring nor any person or entity acting as Ferring's agent ever discussed with VectivBio the inventorship of the specific patent family that VectivBio had filed in 2020 and 2021 that misappropriated Ferring's pre-existing know-how and inventions. The only remark ever made by Ferring about inventorship concerned an application from a *different and unrelated* patent family relating to the GVHD indication, where Ferring flagged that VectivBio had omitted naming as an inventor the primary GlyPharma scientist who had worked on GVHD.

9. In late 2024, Ferring began a deep-dive review regarding a potential business opportunity related to apraglutide. A renewed review that began a few months later lasted through mid-2025. It was during these reviews that Ferring first learned that VectivBio had misappropriated Ferring's know-how and inventions that pre-existed the relationship with GlyPharma and included them in VectivBio's patent applications. Ferring promptly notified VectivBio and sought a good faith resolution. The parties were unable to resolve the dispute, requiring Ferring to file this Complaint to assert its rights.

10. While Ferring has acted in good faith to resolve the important issues raised in this Complaint, VectivBio has not. As part of its attempt to reach a resolution without the need for

MF-363184351

litigation, Ferring highlighted to VectivBio certain confidential Ferring documents relating to apraglutide's development and specifically stated to VectivBio that the information should only be used in connection with the discussions about whether the dispute could be resolved. Eschewing Ferring's efforts to resolve the issues in good faith, VectivBio instead used Ferring's confidential documents to inform a series of amendments in pending applications that include Ferring's pre-existing know-how and inventions. VectivBio then incorrectly argued that the amendments cut off Ferring's rights in these applications. This bad faith use of Ferring confidential information has only caused further harm to Ferring. Indeed, the amended claims that VectivBio is now pursuing could diminish the value of any resulting patents to the detriment of both parties.

11.     To be clear, before 2025, neither Ferring, nor any person or entity acting as an agent for Ferring, ever discussed with VectivBio any trade secret or inventorship question relating to the work of Ferring scientists, such as Ferring's work on the preferred salt form for apraglutide that pre-existed Ferring's relationship with GlyPharma. Again, relying on VectivBio's representations, Ferring did not think there was any reason to do so. In short, Ferring did not discover the bases for its claims as alleged herein until recently, and in any event no earlier than the period stretching from late-2024 to mid-2025.

## THE PARTIES

12.     Plaintiff Ferring International Center S.A. is a private limited liability company organized under the laws of Switzerland, having its offices at Chemin de la Vergognausaz 50, 1162 Saint-Prex, Switzerland.

13. Upon information and belief, Defendant VectivBio is a private corporation organized under the laws of Switzerland, having its headquarters at 136 Aeschenvorstadt, Basel, Basel-City, 4051, Switzerland.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1338(a).

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(3) because VectivBio is not a United States resident and, thus, may be sued in any judicial district.

16. This Court may exercise personal jurisdiction over VectivBio under Federal Rule of Civil Procedure 4(k)(2). Ferring's claims arise under federal law. VectivBio has sufficient contacts with the United States as a whole, including but not limited to filing patent applications relating to apraglutide at the United States Patent and Trademark Office. These applications claim the know-how and inventions of Ferring scientists that Ferring had maintained as trade secrets. Other contacts include VectivBio's clinical trials for apraglutide using Ferring's trade secrets. VectivBio conducted these trials within the United States and the State of Texas. On information and belief, VectivBio is not subject to a court of general jurisdiction in any state besides the State of Texas. This Court's exercise of jurisdiction over VectivBio therefore satisfies due process.

17. Additionally, VectivBio has sufficient minimum contacts with the State of Texas such that this Court's exercise of personal jurisdiction over VectivBio does not offend traditional notions of fair play and substantial justice. VectivBio has purposely availed itself of the laws of the State of Texas by conducting business and using Ferring's trade secrets concerning apraglutide in the State of Texas. For example, VectivBio sponsored one or more clinical trials

for apraglutide with a study location within the State of Texas.  Jurisdictional discovery would be required to uncover the full scope of VectivBio's contacts with the State of Texas.

## ADDITIONAL BACKGROUND

*Apraglutide Salt Form and Drug Product Development*

18. Prior to Ferring's relationship with GlyPharma/VectivBio, Ferring scientists, including Torsten Weiss, discovered and developed preferred salt forms of apraglutide, including apraglutide sodium salts, that possess improved solubility, stability, and bioavailability over other prior potential options.  They also worked on drug product development.  Rather than seek to patent the know-how and inventions from this work, Ferring retained them as trade secrets, and disclosed them to its partner GlyPharma only under strict confidentiality protections.

*Manufacturing and Additional Development Work*

19. Also prior to Ferring's relationship with GlyPharma/VectivBio, Ferring scientists, including Jean-Marie Receveur, made significant advancements on manufacturing apraglutide, including methods of making preferred salt forms at high purity.  In addition, Ferring scientists, including Jean-Marie Receveur, directed development work performed by one or more contracting vendors, which were obligated to assign to Ferring any arising intellectual property.  Rather than seek to patent the know-how and inventions from this work, Ferring retained them as trade secrets, eventually only disclosing them to GlyPharma under strict confidentiality protections.

*Misappropriation of Ferring's Trade Secrets, and Failure to Name Ferring Scientists as Inventors*

20. Without notifying Ferring, VectivBio included within the specification and one or more of the claims of U.S. Patent No. 11,766,470 (the "'470 patent") Ferring's trade secrets relating to apraglutide, including the preferred salt forms and other manufacturing and

development trade secrets.  VectivBio did not name any Ferring scientists as inventors on the '470 patent.  In addition, VectivBio caused to be filed with the United States Patent and Trademark Office documents assigning the '470 patent solely to VectivBio.  The '470 patent issued with claims that include subject matter that Ferring scientists conceived of and/or reduced to practice prior to Ferring's relationship with GlyPharma, and which neither Ferring nor its scientists were under any obligation to assign to VectivBio.  At all relevant times, VectivBio led Ferring to believe that the '470 patent was not directed to subject matter conceived of by Ferring scientists before Ferring began its relationship with GlyPharma.  Indeed, even as of September 2025, VectivBio incorrectly asserted to Ferring that the '470 patent was directed to subject matter that was developed after that relationship began.

21. Also without notifying Ferring, VectivBio included within the specifications and one or more of the claims of U.S. Patent Application Nos. 17/462,908, 17/524,985, 18/164,340, 18/619,647, 18/626,019, and 18/929,208, and 19/039,081 (collectively, along with any applications claiming priority to the same 2020 and 2021 applications, the "'470 family applications"), Ferring's trade secrets relating to apraglutide, including the preferred salt form and other manufacturing and development trade secrets.  As with the '470 patent, VectivBio did not name any Ferring scientists as inventors on these applications.  In addition, VectivBio caused to be filed with the United States Patent and Trademark Office documents listing VectivBio as the sole applicant and assignee for these applications.  At all relevant times, VectivBio led Ferring to believe that the '470 family applications were not directed to subject matter contributed by Ferring scientists before Ferring began its relationship with GlyPharma.  Indeed, even as of September 2025, VectivBio incorrectly asserted to Ferring that the applications were directed to subject matter that was developed after that relationship began.

22.     Undermining VectivBio's September 2025 assertion are recent activities VectivBio has undertaken at the United States Patent and Trademark Office with respect to certain pending applications.  In response to Ferring's inquiries as to inventorship and misappropriation of Ferring's trade secrets, and Ferring's confidential disclosure to VectivBio of documents relating to these issues, VectivBio amended some of the pending claims of U.S. Patent Application Nos. 18/619,647 and 18/626,019 and suggested the new limitations reflect later-in-time work by VectivBio and/or its predecessors-in-interest and, by implication, not work that was reflected in Ferring's documents recently produced to VectivBio.  VectivBio's suggestion is incorrect and its attempted claim amendments do not advance its position.  Rather than defeat Ferring's claims, VectivBio's recent claim amendments support them, as they evidence a concession by VectivBio that the claims pre-amendment *were* directed to discoveries that Ferring scientists conceived of before Ferring's relationship with GlyPharma.  And, as amended, the claims still rely on and include Ferring's pre-existing know how and inventions.  Nonetheless, the bad faith use of Ferring confidential information directly harms Ferring—not to mention that these amendments could impair the value of any resulting patents, to the detriment of both parties.

### *VectivBio's Unjust Enrichment*

23.     VectivBio has been unjustly enriched from its efforts to misappropriate Ferring's trade secrets in the '470 patent and '470 family applications.  Any issued claims resulting from this misappropriation will expire much later than Ferring's original composition of matter patent, given their much later effective filing dates.  Claims to the salt form of apraglutide, including high purity compositions of this salt form, are also potentially eligible for Patent Term Extension (assuming such extension could be applied for given the important issues raised in this

Complaint), which could extend the term of protection for even longer. Even as VectivBio has attracted significant investment from third parties based on these Ferring innovations, VectivBio has taken the position that it does not owe Ferring anything for them. Further complicating matters, VectivBio has experienced setbacks in clinical trials relating to apraglutide that are likely to diminish, and might even extinguish, any royalty obligations it has to Ferring because the original composition of matter patent may expire contemporaneously with approval and launch of a product. Thus, by usurping Ferring's pre-existing trade secrets for itself, VectivBio has received significant monetary benefits, while potentially denying Ferring any recompense for its foundational contributions relating to apraglutide.

## COUNT I: MISAPPROPRIATION OF TRADE SECRETS

24. Ferring incorporates by reference as though fully set forth herein the allegations in paragraphs 1-23 of this Complaint.

25. VectivBio, through its own interactions and the interactions of its predecessors in interest, obtained access to Ferring's trade secrets, including trade secrets relating to the apraglutide preferred salt form and additional related manufacturing and development trade secrets. These trade secrets have been used in or were intended for use in interstate or foreign commerce.

26. Ferring's trade secrets derive independent economic value from not being generally known to, and not readily ascertainable by proper means by, another person who can obtain economic value from their disclosure or use.

27. Ferring's trade secrets, including those VectivBio obtained access to, are, and at all relevant times were, the subject of reasonable efforts to maintain their secrecy. Ferring placed

conditions of confidentiality on its trade secrets and only allowed VectivBio and its predecessors in interest access to them under such conditions.

28.     VectivBio knew or had reason to know that Ferring's trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and to limit their use to purposes for the benefit of Ferring.

29.     The use of Ferring's trade secrets was an unauthorized act, as it was undertaken without knowledge, authorization, or permission from Ferring. VectivBio either purposefully hid this from Ferring, or knew or should have known that it was using Ferring's trade secrets without authorization or permission. In any event, VectivBio failed to take reasonable steps to avoid the use and disclosure of Ferring's trade secrets. Instead, VectivBio sought to benefit from the use of Ferring's trade secrets, such as by including them in the '470 patent and the '470 family applications.

30.     The use of Ferring's trade secrets in the '470 patent and the '470 family applications has harmed and continues to harm Ferring. Meanwhile, VectivBio has been unjustly enriched, including from third party investments related to the value of the apraglutide salt form and Ferring's additional manufacturing and development trade secrets.

31.     VectivBio's wrongful acts constitute misappropriation of Ferring's trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.*, entitling Ferring to damages, including unjust enrichment, actual loss, and/or a reasonable royalty. Because the misappropriation has been willful and malicious, Ferring is further entitled to the recovery of exemplary damages and attorney fees.

## COUNT II: CORRECTION OF INVENTORSHIP

32. Ferring incorporates by reference as though fully set forth herein the allegations in paragraphs 1-31 of this Complaint.

33. Ferring scientists, such as Torsten Weiss and/or Jean-Marie Receveur, contributed to the conception and/or reduction to practice of the subject matter of at least one claim of each of the '470 patent and/or the '470 family applications.

34. The '470 patent and the '470 family applications do not list Torsten Weiss, Jean-Marie Receveur, or any other Ferring scientists as inventors.

35. The inventive contributions of Ferring's scientists, included in the '470 patent and '470 family applications, were conceived of and/or reduced to practice prior to Ferring's relationship with GlyPharma.

36. The '470 patent and each of the '470 family applications should be corrected to properly reflect the inventive contributions of Ferring scientists. *See* 35 U.S.C § 256. Because these scientists were at all relevant times obligated to assign their rights in such inventions to Ferring, and the relevant inventive contributions of Ferring's scientists pre-existed Ferring's relationship with GlyPharma, Ferring's ownership interest in them should also be confirmed.

## PRAYER FOR RELIEF

WHEREFORE, Ferring prays for judgment as follows:

a. Monetary damages, including unjust enrichment, actual loss, and/or a reasonable royalty, in an amount to be proven at trial;

b. Exemplary damages and attorney fees for willful and malicious misappropriation of Ferring's trade secret information, and any other damages authorized by law;

c. Costs of suit;

d. An order declaring Ferring the rightful owner and legal title holder of any intellectual property, patents, and/or patent applications developed using or relying on the inventions of Ferring scientists and/or Ferring's trade secret information;

e. Injunctive relief, in the form of an order directing VectivBio to take all necessary steps to confirm, assign, and/or restore ownership to Ferring of any intellectual property, patents, and/or patent applications developed using or relying on the inventions of Ferring scientists and/or Ferring's trade secret information;

f. A constructive trust and/or assignment as to any intellectual property, patents, and/or patent applications developed using or relying on inventions of Ferring scientists and/or Ferring's trade secret information; and

g. Such other relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Ferring hereby demands trial by jury of all claims and issues so triable presented in this Complaint.

Dated: October 2, 2025

By: */s/ Melissa R. Smith*
Daralyn J. Durie
Matthew A. Chivvis
John Douglass
Aaron H. Chow
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2407
Telephone: 415.268.7000
Facsimile: 415.268.7522
ddurie@mofo.com
mchivvis@mofo.om
jdouglass@mofo.com
achow@mofo.com

Alyssa Monsen
Vi T. Tran
MORRISON & FOERSTER LLP
250 W. 55th St.
New York, NY 10025
amonsen@mofo.com
vtran@mofo.com

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903.934.8450
Facsimile: 903.934.9257

*Counsel for Plaintiff*